Joseph J. Bell, Esq. (No. 016881985)
**BELL & SHIVAS, P.C.**
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey 07866
Tel.  973-442-7900
Fax 973-442-7990
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM LUNGER,<br><br>                              Plaintiff,<br><br>v.<br><br>DENIS MCDONOUGH, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, ABC CORPS. 1-10, and JOHN/JANE DOES 1-10,<br><br>                              Defendants. | Civil Action No.<br><br>RELATED:<br><br>EEO AGENCY CASE<br><br>EEOC VA CASE NO:  200H-0561-2019101669<br><br>**PLAINTIFF'S FIRST VERIFIED COMPLAINT, JURY DEMAND, AND DESIGNATION OF TRIAL COUNSEL** |

Plaintiff Asuman Savasci ("Plaintiff"), represented by attorneys located at 150 Mineral Springs Drive, P.O. Box 220, Rockaway, NJ 07866, by way of Complaint against Defendants Denis McDonough, Secretary of the Department of Veterans Affairs, a department of the United States of America, ABC Corps. 1-10, and John/Jane Does 1-10, alleges as follows:

## INTRODUCTION

1.      This matter involves Plaintiff having suffered injuries resulting from a systematic pattern of unlawful discrimination, sexual harassment, hostile work environment, and retaliation on the basis of gender, race, disability, and national origin during the course of her employment as a Registered Nurse at the Department of Veterans VA New Jersey Healthcare System, Orange Campus in Orange, New Jersey.  Plaintiff suffered and continues to suffer injuries, damages, and

1

retaliation in her employment as a result of the pattern of harassment and retaliation, which began in or about April 2017 and continued through and beyond April 2019, as set forth in Plaintiff's Complaint filed with the Equal Employment Opportunity Commission ("EEOC") on or about May 7, 2019, with claims accepted and as amended.  The Complaint is timely filed pursuant to a letter from the Department of Veterans Affairs Final Agency Decision dated April 7, 2021 and thereafter received by Plaintiff 2021.

## PARTIES

2.      Plaintiff Asuman Savasci ("Plaintiff")[1], an adult, of Turkish and Armenian descent, female Registered Nurse, was hired in or about January 2017 as a federal public employee, RN / VN2, by Defendant Department of Veterans Affairs ("Department"), a position at the VA New Jersey Healthcare System, Orange Campus at 385 Tremont Avenue, in East Orange, New Jersey 07018.  Plaintiff worked under the direct supervision of Defendants' agents as described herein.

3.      Defendant Department of Veterans Affairs, as headed by Secretary Denis McDonough (hereinafter "VA," "Department," or "McDonough") is a federal governmental agency charged with the responsibility of caring for veterans of the armed forces of the United States of America.  Among its many locations, Defendant operates the VA New Jersey Healthcare System, Orange Campus at 385 Tremont Avenue, in East Orange, New Jersey 07018 (hereinafter "Premises").  The VA's national office is located at 810 Vermont Avenue., N.W. Washington, D.C. 20420.

---

[1] Plaintiff anticipates the possibility of filing a Motion seeking to amend this Complaint if and when a further pending EEOC charge relating to retaliation ongoing following the dates upon which the underlying EEOC Complaint filed on May 7, 2019 could be amended, in the event that procedural circumstances necessitate filing such an application. where the ongoing matter is docketed under the Case Number 200H-0561-2020102065.  The instant Complaint addresses the pattern of discrimination, harassment, and retaliation which was the subject of the Final Agency Decision below.  Employment location and Defendants are identified due to the factual nature of the Complaint and pleading requirements pursuant to Fed. R. Civ. P. 10(a).  The claims asserted in the currently-pending EEOC matter relate to factual developments arising beginning later in 2019 and throughout 2020, which are subject to the ongoing EEOC claim.

4.      At all relevant times herein, Defendant Department employed a direct supervisor of Plaintiff ("Supervisor") who engaged in acts of unlawful discrimination, sexual harassment, and retaliation against Plaintiff.

5.      At all relevant times herein, Defendant Department employed a Director of Clinical Services ("Director") who engaged in acts of retaliation and ratified or otherwise permitted the acts of unlawful discrimination, sexual harassment, and retaliation against Plaintiff to continue. The Director at all relevant times herein had supervisory responsibility over the Supervisor described in Paragraph 4 above.

6.      ABC Corps. 1-10 are unknown corporate or business entities who may have been retained by the VA, whereupon whose actions in this matter have caused Plaintiff to incur damages as set forth in this matter.

7.      John / Jane Does 1-10 are and have been managers, employees, and/or other agents of Defendant whose actions in this matter have been approved, adopted, authorized, ratified, and been relied upon by Defendant.  In addition, John and Jane Does 1-10 are other individuals, including, but not limited to, agents, employees, servants, and representatives of ABC Corps. 1-10 and other individuals whose actions in this matter have caused Plaintiff to incur damages as set forth in this matter.

## JURISDICTION

8.      The Court has federal question jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331.  Plaintiff's causes of action arise primarily under federal law.

9.       The Court may also exercise supplemental jurisdiction over Plaintiff's State of New Jersey statutory and common law claims pursuant to 28 U.S.C. § 1367(a) because those arise from the same nucleus of operative facts set forth in Plaintiff's Complaint.

10.     This action is properly filed in the venue of the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1391(e) because the facts giving rise to the causes of action occurred in New Jersey, Plaintiff is a resident of the State of New Jersey, and the Department of Veterans Affairs Orange Campus is located in the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Employment Background and Department Policies

11.     Plaintiff is an adult, Caucasian, of Turkish and Armenian descent, female Registered Nurse, with over ten (10) years of experience in her field of employment.

12.     Plaintiff was hired in or about January 2017 as a federal public employee, RN / VN2, by the Department and began working at the VA New Jersey Healthcare System, Orange Campus in East Orange, New Jersey.

13.     The Department has stated policies concerning harassment, disruptive behavior, and violence in the workplace.  The Department's stated policies include identifying and preventing disruptive and violent behavior, including through  "VHA's Workplace Violence Prevention Program (WVPP)", last updated on the Department's website as of December 21, 2016, a copy of which is annexed to this Verified Complaint as **Exhibit A**, which sets forth a process that includes employees and all personnel reporting disruptive behavior through a Prevention and Management of Disruptive Behavior (PMDB), Disruptive Behavior Reporting System (DBRS), and Workplace Behavioral Risk Assessment (WBRA).  This process also includes the role of leadership through assessment by the Disruptive Behavior Committee 9DBC) and Employee

Threat Assessment Team (ETAT), management planning through the Order of Behavioral Restriction (OBR), and communication.

14.     The WVPP also includes individualized assessment and management plans and reporting designed to protect the safety of staff and provide the most updated training of staff in order to provide a safe working environment in which to deliver quality healthcare, policies which apply in the context of patients as well as staff.

15.     On June 18, 1999, the EEOC issued its "Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors," which requires Federal agencies to establish anti-harassment policies that cover all protected bases of discrimination.  The Department has developed stated policies which are consistent with the EEOC directive.  The Department adopted a "Zero (0) Tolerance Policy" regarding harassment, which was effective during the time in which Plaintiff experienced sexual harassment and retaliation by Defendants.  The most recent updates, reflecting longstanding stated policies, including the Zero (0) Tolerance policy which Plaintiff had been apprised of commensurate with her employment, are contained in VA Directive 5979, Harassment Prevention Policy, dated December 8, 2020 ("the Policy"), a copy of which is annexed hereto as **Exhibit B** to the Verified Complaint.

16.     The Policy prohibits: "It is policy at VA to maintain a work environment free from harassment.  Harassing conduct will not be tolerated.  This policy requires immediate and appropriate action to be taken by management when notified of hostile conduct that is, or has the potential to become, severe or pervasive to the point that it constitutes a legal claim of sexual or non-sexual harassment."  The EEOC definition of harassment includes "any unwelcome verbal or physical conduct based upon race, color, religion, sex (including … pregnancy), national origin, age, disability, genetic information, parental status or retaliation for opposing discriminatory

practices or participating in the discrimination complaint process." This definition further provides that harassment arises "when: (1) The behavior can reasonably be considered to adversely affect the work environment, or, (2) An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct."

17.     The Policy defines sexual harassment:  "Sexual harassment involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to or rejection of such conduct is made explicitly or implicitly a term or condition of one's employment or is used as a basis for career or employment decisions affecting that person; or such conduct interferes with an individual's performance or creates an intimidating, hostile or offensive work environment."

18.     The Policy also sets forth management responsibilities for managers and supervisors to prevent harassment and inappropriate behavior that could lead to illegal harassment, and to respond promptly and appropriately through protocols when they learn of any such conduct.

19.     The Policy also sets forth the employee's rights and responsibilities, including protection from acts of discrimination or retaliation for reporting such behavior.

20.     The U.S. Equal Employment Opportunity Commission states on its website, under "Employer Liability for Harassment", "The Employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages."  A copy of the US EEOC communication is annexed hereto as **Exhibit C**.

21.     Plaintiff has endured loss of wages as a result of her experiences of acts of harassment by her Supervisor as well as retaliation by Defendants.

22.     The U.S. Equal Employment Opportunity Commission also states on its website (Exhibit C), "The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control, if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action."

### Sexual Harassment and Related Behavior by Plaintiff's Supervisor

23.     Throughout 2017 and 2018, Plaintiff and the Supervisor worked in the same location at the Premises, providing care relating to the mental health of patients at mental health units locate at Building 18, Unit 18B, and Unit 12B, at the Orange Campus.

24.     Beginning in approximately April 2017, and continuing through approximately November 2018, the Supervisor began to engage in a continued and systematic pattern of verbal sexual innuendo toward Plaintiff and making quid pro quo sexual advances toward Plaintiff.

25.     Beginning in approximately April 2017, and continuing through approximately November 2018, the Supervisor engaged in a pattern of touching Plaintiff inappropriately, including on her upper thighs or inside her thigs.  Plaintiff felt that she was targeted, at least in part, upon information and belief, she is a woman born in another nation-state, with slight barriers concerning language and custom, and was therefore viewed as an easy target for the Supervisor. Furthermore, the Supervisor was aware that Plaintiff has a family member who served as a veteran, that she needs her job, and that her job means so much to her.

26.     On one (1) occasion, Plaintiff was having a conversation with the Supervisor where the Supervisor made comments such as, "You have to at last give me something after all this work I did," while sliding his hand down Plaintiff's legs.  Plaintiff did not initially understand what the Supervisor meant by this comment, not realizing that the Supervisor was seeking sexual favors, and instead believed that the Supervisor was asking for money, a gift card, or other type of gift.

27.     In one (1) instance, however, Plaintiff asked one (1) of her colleagues at work what it meant when a man asks a woman for personal favors.  This colleague informed Plaintiff that such a request meant that "they either wanted a sexual favor or money."

28.     Throughout 2017 and 2018, the Supervisor continued a pattern of conduct whereby he would engage Plaintiff in "unwanted lewd conversation" and innuendo, touch Plaintiff without her consent, stalk Plaintiff, and demand sexual favors from Plaintiff in exchange for accommodating scheduling requests

29.     In one (1) instance, the Supervisor entered the lunchroom under the guise that he was updating the schedule and needed a copy of the schedule posted in the lunchroom.  At that point, the Supervisor began to relate to Plaintiff in graphic and lewd detail his intention or desire to throw Plaintiff on the floor and accost her in a sexual manner.

30.     In another instance occurring in or about November 2017, the Supervisor told Plaintiff: "all men love you, who wouldn't want to be your husband?"

31.     The Supervisor's conduct continued into 2018.  On or about April 5, 2018, Plaintiff had a conversation with the Supervisor where she was requesting a shift change.  The Supervisor went on to tell Plaintiff that he needed a favor that only she "… could uniquely provide."  Plaintiff then inquired as to the type of favor the Supervisor meant.  The Supervisor responded that he did not need material things, but rather "something personal that only [she] could freely give," and adding that "nobody needs to know, only you and I will know; you already know what I'm asking from you."  At that moment, the Supervisor drew his chair closer to Plaintiff and n=began to touch her inner thigh, at which point Plaintiff began crying.

32.     The Supervisor's pattern of conduct was such that he made efforts to isolate Plaintiff by herself, such as making efforts to have her come to his office toward the end of

workdays, where the Supervisor knew that the building would typically clear out by approximately 3:00 pm. The Supervisor would claim that he was trying to "protect her" by having her come to his office after regular hours in order to prevent other employees from receiving the impression that Plaintiff was being disciplined, but which was actually designed as a pretext to lure Plaintiff to his office in order to carry on his pattern of sexual harassment.

33.     During all relevant times where Plaintiff was aware of the nature of the Supervisor's pattern of conduct, Plaintiff made it clear that such advances were unwelcome and unwanted. Plaintiff would tell the Supervisor that she was "religious, … married, that [she] does not tolerate such behavior and that it was a horrible, unwanted anxiety provoking event when he first demanded sexual favor for addressing a scheduling request."

34.     Plaintiff's refusal to accept the unwanted advances and sexual harassment by the Supervisor resulted in additional harassment and retaliation from the Supervisor concerning Plaintiff's scheduling requests and related documentation.

35.     For example, on or about September 13, 2017, Plaintiff received a memo claiming that her absenteeism had been very high, including multiple days of absences, lateness, and Absent Without Leave (AWOL) between March 2017 and September 2017, and stating that if Plaintiff continued to be AWOL, it "could lead to termination." The memo, signed by the Supervisor, further stated that he "will not grant, or recommend the granting, of leave without pay if you exhaust your leave balances."

36.     From July 15, 2018 until August 17, 2018, the Supervisor scheduled Plaintiff to work on multiple consecutive weekends without any weekends off.

37.     On an unspecified date between August 2018 and September 2018, the Supervisor marked down Plaintiff's status as AWOL.

38.     During this period of time, Plaintiff suffered two (2) injuries in the workplace relating to patient treatment wherein she had been attacked.  Plaintiff suffered an arm injury on July 29, 2018.  Plaintiff suffered a double concussion on September 27, 2018.

39.     In or about October 2018, Plaintiff's union representative submitted a letter protesting the AWOL designation, indicating that Plaintiff had been attacked by patients in her unit twice, she had pending worker's compensation claims regarding her injuries resulting from the attacks, and was taking leave, in part, to seek treatment for her injuries.  Upon Plaintiff's return to work, the Supervisor did not want to schedule Plaintiff's light duty work during the day shift, where there would be more staff present.

40.     In or about October 2018, the Supervisor informed Plaintiff that she was in danger of termination due to leave usage and instruction circulated between the Supervisor and Director concerning the preparation for termination of Plaintiff's employment.  Plaintiff had never been advised prior to the EEO investigation in late 2019 that the Director had been planning to terminate Plaintiff's employment.  In fact, upon information and belief, the Director and supervisor each claimed that the other one (1) was planning to terminate Plaintiff's employment during this period of time.

41.     When, by November 2018, the Supervisor's conduct toward Plaintiff did not cease, including summoning Plaintiff to his office when other persons were not around or after hours, with an escalation of unwanted touching and requests for sexual favors, Plaintiff reported this matter to the VA Police Department.

42.     Between November 2018 and January 2019, the VA Police conducted an investigation meeting with Plaintiff on several occasions in November 2018.  Ultimately, the VA

Police Department investigation concluded wherein there was not sufficient evidence for a criminal prosecution, but where further administrative review was recommended.

43.     Between November 2018 and March 2019, the Supervisor continued to stalk and follow Plaintiff even after administrative response kept them from being present in the same work area.

44.     Between November 2018 and March 2019, the Supervisor was not removed from the same building as Plaintiff. Rather, Plaintiff was moved from Unit 18B to Unit 12B.

45.     Defendant Supervisor Mancuso would tell Plaintiff that this activity was a "secret" and that she should erase his text messages.

46.     Rather than being reprimanded or disciplined, Defendants failed to take appropriate action against the Supervisor in spite of documentary electronic evidence gathered by Plaintiff which supported her experiences as a victim of the Supervisor's sexual harassment. Even if an investigation was conducted, the Supervisor was allowed to continue working out his time until reaching his retirement, which occurred in or about March 2019.

47.     From November 2018 onward, Plaintiff was not advised of the scope of any potential remedial actions concerning the Supervisor. Even after the Supervisor retired in approximately March 2019, Plaintiff was not so advised and for a long period of time reasonably feared that he was still working and situated on the Premises. No corrective action with respect to the supervisor had been taken in spite of the Department's own Zero (0) Tolerance policy regarding sexual harassment.

48.     In fact, on or about March 8, 2019, Plaintiff transmitted an email to the Director stating that she did not feel safe at Unit 12B "due to an ongoing dispute with [her] previous manager."

49.     Plaintiff felt sufficiently at risk that by April 2019 she retained the services of legal representation, advising the Director about such retention in an email on or about April 2, 2019.

50.     Upon information and belief, Plaintiff's Supervisor had previously been accused of similar sexual harassment behavior while working at the Lyons VA Medical Center in Lyons, New Jersey, which resulted in his transfer to the Orange Campus.

**Retaliation Against Plaintiff for Protected EEOC Activity and Reporting**

51.     From the time that Plaintiff reported sexual harassment being directed toward her by her Supervisor, Plaintiff was subjected to an ongoing pattern of retaliation by Defendants.  As set forth in the preceding paragraphs, Defendants failed to take adequate remedial measures and failed to advise Plaintiff of any developments which would have informed her that her Supervisor was no longer working at the Premises or had retired.

52.     The forms of retaliation took on several forms of Defendants' behavior and denials of reasonable accommodations to Plaintiff: (1) detail to Unit 12B; (2) transfer to night shift; (3) having Plaintiff work without a break; (4) Plaintiff's weekend assignments; (5) irregularities with the provision of Plaintiff's proficiency report; (6) denial of a promotion to Plaintiff; (7) the Director's requests for medical documentation; and (8) denial of reasonable accommodations concerning injuries and security precautions.

53.     Upon information and belief, the Director of Clinical Services and Plaintiff's Supervisor had known each other for a long period of time for many years and were on close friendly terms.  Upon information and belief, this friendship served as at least a partial source of the retaliation encountered by Plaintiff.

54.     Plaintiff experienced retaliation based upon the detailing of her work to Unit 12B. plaintiff had been working at Unit 18B until taking official reporting action through appropriate

channels outside of interactions with the Supervisor. Plaintiff was detailed to Unit 12B more often beginning approximately January 19, 2019. This was the decision of the Director to assign Plaintiff such detailing whenever Plaintiff was not assigned light duty. By March 2019, Plaintiff had requested a reasonable accommodation to be returned to Unit 18B since she did not "feel comfortable for [her] safety and wellbeing at 12B due to an ongoing dispute with previous manager." Plaintiff had presented medical documentation which would have allowed her to continue working at Unit 18B in a position commensurate with her level of recovery from her physical injuries.

55.     Upon information and belief, Defendants became aware of Plaintiff's reporting and EEO activity in various stages between November 2018 and March 2019, wherein Plaintiff's initial EEO contact occurred on or about January 28, 2019, with email notification to the Director on or about March 4, 2019. These EEO notifications all followed the Plaintiff's reporting of the matter to the VA Police Department in November 2018.

56.     Upon information and belief, the Director's reaction to Plaintiff's report of sexual harassment by the Supervisor included the Director trying to label and describe Plaintiff as a "problem in the unit."  Plaintiff was also labelled as a "troublemaker" by wither the Director or another director or supervisor with influence in setting Plaintiff's work schedule. The Director viewed Plaintiff as a "problem," upon information and belief, stemming from her reporting of sexual harassment experienced at work, as well as with respect to having suffered injuries in the workplace while in performance of her RN duties.

57.     During this period of time, Defendants and their agents, employees, managers, and supervisors failed not only to take appropriate remedial measures and notify Plaintiff concerning the status of the Supervisor's whereabouts in relation to the Premises, but also would not provide

her with a security escort to her motor vehicle during a time in which she feared for her safety. Plaintiff's requests for both a security escort, as well as for a restraining order, were refused by the Department.

58.     The Director's repeated detailing of Plaintiff to Unit 12B also violated Plaintiff's light duty requirements wherein Plaintiff was still recovering from work-related injuries, specifically from her double concussion. The Director often refused to accept Plaintiff's medical documentation and would erroneously characterize her working status, including erroneous recording of Plaintiff as AWOL. The nature of Plaintiff's detailing assignment at that time would require her to report to 18B and then to 12B, which would add an additional fifteen (15) to twenty (20) minutes of walking time each way during a time in which she was still feeling the effects from her work-related double concussion, and also would delay her provision of patient care. This form of reporting and detailing served no legitimate purpose.

59.     Separate from the detailing, Plaintiff also encountered delays and difficulties with the completion of her proficiency report, which was due to be completed on or before January 22, 2019. Plaintiff had completed her portion of the proficiency report in November 2018. The Department was late in completing her proficiency report, even as other employees had received their completed report on time or ahead of schedule. This delay was caused in part by the Supervisor having held Plaintiff's evaluation paperwork so that she would effectively be compelled to interact with him. Although Plaintiff's proficiency report ultimately reflected an employee proficiency rating of "high satisfactory," such rating came only after delays and the Director's change of a rating from "satisfactory." Plaintiff had also not been given credit for her prior experience as an RN with respect to setting her pay grade. Upon information and belief, this sequence of events transpired based upon the belief or expectation that an adverse employment

action or development with respect to Plaintiff would occur. Even tough no adverse employment event occurred, during this time period, the delays or preliminary report of "satisfactory" from a Director who had not been a direct supervisor and therefore not been in a position to properly evaluate Plaintiff's work could at that time have been used in a manner so as to unjustly negatively impact Plaintiff's employment conditions.

60.      As an additional form of retaliation, on January 28 and 29, 2019, the Director or another director assigned Plaintiff to work the evening shift (1:00 pm to 9:30 pm). Such a transfer was in violation of Plaintiff's medical requirement for the assignment of light duty during such time period. Shortly after Plaintiff's reporting of sexual harassment to EEO and the Department, the Director had told Plaintiff that she must work nights. Plaintiff's medical accommodation had already been approved and such assignment directly contradicted such approval.

61.      Separately, on February 2, 2019, Plaintiff was required to work the day without a break, being advised only that the Unit was understaffed. Upon information and belief, this discrete incident is reflective of the larger pattern of conduct which arose following Plaintiff's reporting of sexual harassment experienced at work.

62.      Beginning on or about February 11, 2019, the Director began to repeatedly request additional medical documentation from Plaintiff, including diagnosis, medications, and private health care information. Plaintiff had been in the process of recovering from her injuries and was receiving medical directives which would allow her to resume an increasing scope of duties, while short of being able to work on all types of shifts or every kind of duty. Through March and April 2019, Plaintiff could work duties that did not include charge nurse, and could work at least on a temporary basis until 4:00 pm, which included the 7:30 am to 4:00 pm shift. The Director would

continue to harass Plaintiff and require that she provide more levels of documentation than would be required of other employees in similar circumstances.

63.     As another form of retaliation set forth in the EEOC claim filed in 2019, beginning on April 12, 2019, the Director would require that Plaintiff work a schedule that included all Saturdays and Sundays, all weekend, with no weekends off.  The Director would even require that the supervisor in charge of Plaintiff set and enforce such schedule even though the supervisor did not agree with the Director's actions.  The supervisor would attempt to devise a schedule which did not require Plaintiff to work all weekends, only to be threatened with disciplinary writeups unless the supervisor carried out the Director's orders concerning Plaintiff's schedule.

64.     The schedule requiring Plaintiff to work every Saturday and Sunday violated Department policies.  No other employees were subjected to such requirements to work all weekend days in perpetuity.  Such scheduling also violates the contract between the Department and Union representing employees that include nursing personnel.

65.     Altogether, the scheduling requirements concerning Plaintiff's shift, weekend hours, and detailing between Units 18B to 12B violated Plaintiff's requests for reasonable accommodations concerning her recovery from workplace injuries.  Plaintiff had also incurred such injuries and was suffering from stress and related conditions resulting from her sexual harassment and had required treatment and medications.  The director's imposition of schedules the likes of which no other employees were subjected to also impeded Plaintiff's ability to pursue her required medical treatments during such period of time.

67.     Altogether, such conduct was retaliatory with pretext with respect to Plaintiff's reporting if herself being subjected to unlawful sexual harassment by her Supervisor.  The Department failed to take adequate remedial measures and even arranged her detailing assignments

in such a way that she would have to walk past a working area which the Supervisor had been overseeing, all without any notification concerning his employment status or any remedial measures.

68.     Upon information and belief, Plaintiff was perceived as an easy mark for sexual harassment by the Supervisor given her status as being a Caucasian female of Turkish and Armenian descent, with some language and custom barrier, and with a husband who was living abroad.

69.     The experiences described herein above caused Plaintiff to suffer significant damages, stress, emotional damage, pain and suffering, loss of wages and income, loss of leave time as she has had to take such time as per physicians' orders, and potential professional damage as it is unclear whether she might encounter further resistance concerning her professional growth.

70.     The actions described hereinabove, constitute unlawful discrimination under Federal and State law, for which Plaintiff has suffered damages and will continue to suffer damages.

## **FIRST COUNT**

**(Unlawful Gender, Race, and National Origin Discrimination and Retaliation - Title VII of the Civil Rights Act of 1964 and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

71.     Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

72.     Plaintiff has been subjected to gender discrimination by her fellow coworkers and suffered adverse employment consequences on the basis of her gender, race, national origin, and in retaliation for complaining about the discriminatory conduct of her coworkers.

73.     The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct and willful and wanton disregard for Plaintiff's entitlement to a discriminatory free work environment;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## SECOND COUNT

### (Hostile Working Environment- Title VII of the Civil Rights Act of 1964 and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)

74.     Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

75.     Throughout her employment with Defendants, Plaintiff was victimized by a work environment that was hostile toward female employees and employees based on race and national origin.  Despite Plaintiff's reports concerning her harassment, which occurred in a severe and

pervasive manner, no effective actions or corrective measures were taken by Defendants to protect Plaintiff from being treated in a derogatory manner, harassed, humiliated, and intimidated by her coworkers.

76.     The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct and willful and wanton disregard for Plaintiff's entitlement to a discriminatory free work environment;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## THIRD COUNT

**(Sexual Harassment – *Quid Pro Quo*/Violation of the Law Against Discrimination - Title VII of the Civil Rights Act of 1964 and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

77.     Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

78.     Throughout her employment with Defendants, Plaintiff was continuously harassed by her Supervisor, who made harassing sexual remarks, made quid pro quo sexual propositions, and made unwanted physical contact a condition of her job. Plaintiff's refusal to engage in sexual contact with the Supervisor Mancuso in her loss of ability to work and being ostracized by her supervisor, and derogatory comments by her Supervisor, and ultimately being sexually harassed and assaulted by the Supervisor.

79.     The actions described hereinabove, all of which were performed wantonly and intentionally, constitute a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct and willful and wanton disregard for Plaintiff's entitlement to a discriminatory free work environment;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## FOURTH COUNT

**(Retaliation by Department of Veterans Affairs' Supervisor(s)/Manager(s) - Title VII of the Civil Rights Act of 1964 and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

80.     Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

81.     Plaintiff has suffered materially adverse employment consequences in retaliation for complaining about the discriminatory conduct of her supervisor(s)/manager(s).   Plaintiff has engaged in a protected activity by making such complaints of unlawful behavior of sex and gender discrimination, hostile work environment, sexual harassment, and related claims, and retaliation to her supervisor(s)/manager(s) at the Department, to the VA Police Department, and the EEOC for all relevant time periods underlying the factual basis of Plaintiff's allegations and Complaint.

82.     Plaintiff has suffered and continues to suffer materially adverse employment consequences as a result of retaliation, in the form of the consequences described above herein, including the retaliatory conduct of the Director.

83.     Plaintiff's Director scrutinized Plaintiff's time and work schedule, altered her work schedule, demanded additional medical documentation, and created or directed scheduling in violation of her medical orders and reasonable accommodations, issued warnings and reprimands, upon information and belief, to stain Plaintiff's working record and set up Plaintiff to be removed from Department employment, refused Plaintiff's documentation verifying her medical conditions, and impaired her ability to work in a manner that is not demanded of other employees.

84.     Plaintiff has suffered materially adverse employment consequences in retaliation for answering questions during the EEO investigation of her EEO Complaint.

85.   Plaintiff has suffered materially adverse employment consequences in retaliation for complaining to law enforcement and police, including postal investigators in connection with her EEO Complaint and the Supervisor Mancuso's discrimination, harassment, sexual assaults and related wrongful and illegal actions perpetrated by him against Plaintiff.

86.   Plaintiff has suffered materially adverse employment consequences in retaliation for resisting the sexual advances of the Supervisor.

87.   Plaintiff has suffered materially adverse employment consequences in retaliation for cooperating in the EEO process.

88.   Plaintiff has suffered materially adverse employment consequences and been threatened with termination for reasons that are discriminatory and for asserting her right to be free from employment discrimination including harassment, and to be able report discrimination pursuant to Department policy and procedures, which is all protected activity.

89.   The suspicious timing of the actions taken since Plaintiff's reporting of sexual harassment, and the nature of the complaints, and the verbal abuse and accusations that she is somehow a "problem", are all inconsistent with Plaintiff's prior work performance and good employee reviews, her quiet nature and her polite character, all support an inference of retaliation.

90.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct and willful and wanton disregard for Plaintiff's entitlement to a discriminatory free work environment;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## FIFTH COUNT

**(Aiding and Abetting Under the Law Against Discrimination - N.J.S.A. 10:5-1 et seq.)**

91.      Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

92.      Defendants, based upon the allegations set forth above, have aided, abetted incited compelled and/or coerced the doing of acts, against Plaintiff, that are forbidden under the Law Against Discrimination, in violation of, among other things, N.J.S.A. 10:5-12(e).

93.      The actions described hereinabove were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## SIXTH COUNT

### (Vicarious/Derivative Liability for Unlawful Harassment by Department of Veterans Affairs Supervisors and Managers-Title VII of the Civil Rights Act of 1964 and Common Law)

96.     Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

97.     Each and every act or omission alleged in this Complaint to have been committed or omitted by an individual, or a discrete group of individuals, was committed or omitted using the authority given to the person alleged to have committed or omitted the act by supervisor(s) and person(s) with management authority vested upon them by virtue of their employment with the Department of Veterans Affairs.

98.     Defendant Department and employees had a duty to Plaintiff to properly hire, supervise and monitor its employees, to ensure that illegal behavior was not committed, condoned or permitted to continue, either negligently or intentionally.

99.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological, emotional, and financial injuries, losses and tribulations.

100.    No immediate steps were taken by the Department of Veterans Affairs to terminate the employment of any of the individuals involved in harassing or retaliating against Plaintiff as described herein above.

101.    In particular, the Supervisor was not terminated even after physically, emotionally and verbally threatening Plaintiff, harassing her, assaulting her, discriminating against her, and putting her in constant fear of her physical well-being at the VA, as well as posing a threat to others.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## SEVENTH COUNT

**(Common Law Intentional Infliction of Emotional Distress)**

102.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

102.    Upon learning through Plaintiff's reports and representations that she did not want to engage in sexual contact with the Supervisor, the individual supervisors and management officials and VA, vicariously, engaged in a concerted campaign to intentionally inflict emotional distress upon Plaintiff.

103.    As a direct and proximate result, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological, emotional and financial injuries, losses and tribulations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## EIGHTH COUNT

### (Common Law Negligent Infliction of Emotional Distress)

104.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

105.    Upon learning about Plaintiff's sexual harassment and assault, Defendants, and agents, managers, and supervisors, individually and in their official capacities negligently or recklessly inflicted emotional distress upon Plaintiff by permitting the Supervisor to continue to work in the same building as Plaintiff and allowed subsequent retaliation against Plaintiff by Defendants. As a direct and proximate result of this negligence, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological and financial injuries, losses and tribulations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## NINTH COUNT

**(Common Law Offensive Physical Contact Made or Threatened / Assault and Battery)**

106.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

107.    The Supervisor's conduct as described above, at all relevant times, included repeated instances of him repeatedly touching Plaintiff in a nonconsensual, unwelcomed manner, or reasonable apprehension of such unwanted touching occurring repeatedly and in an unwelcomed manner that was carried out with malice, a wanton disregard of Plaintiff's personal rights and sensitivities, and/or a foreseeability of unintended harmful consequences.

108.    As a direct and proximate result of this negligence, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological, emotional and financial injuries, losses and tribulations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## TENTH COUNT

**(Common Law and Title VII Failure to Supervise/Train – Negligent Supervision Claim)**

109.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

110.    Defendant VA failed to supervise and/or train its supervisors and managers with respect to VA's known policies and procedures put in place to eliminate and guard against sexual harassment and discrimination and hostile work environment, including but not limited to the VA Zero Tolerance Policy on Workplace Harassment, EEO Directive, and EEOC Policy, as set forth in Exhibits attached hereto.

111.    As a direct and proximate result of this negligence, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological, emotional and financial injuries, losses and tribulations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

## ELEVENTH COUNT

### (Rehabilitation Act of 1973)

112.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

113.    Defendant's actions, as carried out by the actions of the Director, with respect to discrimination against Plaintiff's disabilities as described hereinabove, as well as scheduling requests, scheduling in violation of Plaintiff's medical orders and policies of the VA and Union covering VA nursing personnel, and denial of Plaintiff's requests, and demands for additional production of Plaintiff's medical information, constitutes a violation of the Rehabilitation Act of 1973, 29 U.S.C. Sections 701, 706, 791, et seq., for which Plaintiff is entitled to relief.

114.    As a direct and proximate result of this negligence, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological, emotional and financial injuries, losses and tribulations.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, assessing penalties and sanctions, and awarding her:

(a) Equitable damages, including but not limited to, lost wages, benefits and interest, denied her;

(b) Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

(c) Prejudgment and post judgment interest;

(d) Punitive damages for Defendants' extreme and outrageous conduct was in wanton disregard for Plaintiff's entitlement to a workplace free from harassment and retaliation;

(e) Costs of suit, including reasonable attorneys' fees;

(f) Statutorily imposed damages;

(g) Any such other relief deemed by the Court to be equitable and just, as provided by law.

Bell & Shivas, P.C.
Attorneys for Plaintiff

/s/ Joseph J. Bell

Joseph J. Bell, Esq.

Dated:  July 6, 2021

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

Bell & Shivas, P.C.
Attorneys for Plaintiff

/s/ Joseph J. Bell

Joseph J. Bell, Esq.

Dated:  July 6, 2021

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Joseph J. Bell, Esq. as trial counsel.

Bell & Shivas, P.C.
Attorneys for Plaintiff

/s/ Joseph J. Bell

Joseph J. Bell, Esq.

Dated:  July 6, 2021

## **CERTIFICATION**

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not currently being litigated before any Court and the matter is not the subject of any alternative dispute resolution proceedings.   The matters arise, however, out of the USPS EEO formal complaint and investigation.   An additional EEO matter is pending arising out of subsequent facts, as set forth in footnote 1 above.

Bell & Shivas, P.C.
Attorneys for Plaintiff

/s/ Joseph J. Bell
_____
Joseph J. Bell, Esq.

Dated:  July 6, 2021

## VERIFICATION

I am the Plaintiff in connection with the foregoing Complaint. The allegations contained in said Complaint are true to the best of my information, knowledge and belief. The said Complaint is made in truth, good faith and without collusion for the causes set forth therein.

I hereby certify and verify that the foregoing statements made by me are true.

I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
Asuman Savasci

Dated: July 5, 2021

## VERIFICATION

I am the Plaintiff in connection with the foregoing Complaint. The allegations contained in said Complaint are true to the best of my information, knowledge and belief. The said Complaint is made in truth, good faith and without collusion for the causes set forth therein.

I hereby certify and verify that the foregoing statements made by me are true.

I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

Asuman Savasci

Dated: July 5, 2021

# EXHIBIT A

Get help from Veterans Crisis Line

LOCATOR                    CONTACT                    SEARCH



U.S. Department
of Veterans Affairs    (https://www.va.gov)

VA (http://www.va.gov/) » Health Care (http://www.va.gov/health) » Public Health (/index.asp) » About Us (/PUBLICHEALTH/about/index.asp)
» VHA's Workplace Violence Prevention Program (WVPP)

# Public Health

MENU

## VHA's Workplace Violence Prevention Program (WVPP)

The WVPP develops and implements policy for workplace violence prevention in healthcare. Find out more about
VHA's workplace violence prevention in healthcare facilities (/employeehealth/threat_management/index.asp).

In order to promote a culture of safety, VHA has adopted a simultaneous, four-pronged approach. The process of
workplace violence prevention is summarized in the figure below.



Van Male, February 2016

## Employee Education and Training: Prevention and Management of Disruptive Behavior (PMDB)

PMDB Program objectives Include:

- To ensure that that the PMDB employee training program reflects the best and most up-to-date practices in the field and addresses the risks to VHA employees working in the constantly evolving setting for healthcare delivery.
- To enhance the PMDB training methodology, including the use of Web-based learning to standardize the employees' knowledge base, and ensure that all VHA staff have needed information.

## Event Reporting and Data Management: Disruptive Behavior Reporting System (DBRS)

- VHA has developed and installed in every facility, a secure, web-based DBRS that allows all employees to have a voice regarding any concerns they may have about safety.
- The DBRS provides information back to employees that their reports have been received and that action is being taken to address their concerns.

## Individualized Assessment and Management Plan

- VHA emphasizes the ethical use of evidence-based, data-driven threat assessment and management practices.
- In accordance with current community best practice standards, VHA has implemented multi-and interdisciplinary teams in every facility to make individual assessments and develop customized safety plans.

## Safety Plan Communication

- VHA has developed and implemented an electronic alert and notification system to communicate safety plan information at the initial moments of a patient encounter.
- In so doing, VHA's program model communicates directly with employees, thus completing the interactive and ongoing process of promoting workplace safety.

Download free viewer and reader software (http://www.va.gov/viewer.htm) to view PDF, video and other file formats.

return to top ▲

**CONNECT**

Veterans Crisis Line: (https://www.veteranscrisisline.net/)

**1-800-273-8255** (tel:+18002738255) (Press 1)

Social Media



(https://....) Complete Directory (https://www.va.gov/opa/socialmedia.asp)

**EMAIL UPDATES**

Email Address | Signup

**VA HOME**

**QUICK LIST**

**RESOURCES**

**ADMINISTRATION**

U.S. Department of Veterans Affairs | 810 Vermont Avenue, NW Washington DC 20420

Last updated December 21, 2016

# EXHIBIT B

**Department of Veterans Affairs**
Washington, DC 20420

**VA DIRECTIVE 5979**
**Transmittal Sheet**
**December 8, 2020**

## HARASSMENT PREVENTION POLICY

1. **REASON FOR ISSUE**: This directive establishes the Department of Veterans Affairs (VA) harassment prevention policy. It outlines roles and responsibilities to help VA maintain a workplace free from harassment.

2. **SUMMARY OF CONTENTS/MAJOR CHANGES**: "Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors," June 18, 1999, Equal Employment Opportunity Commission (EEOC), requires Federal agencies to establish anti-harassment procedures that cover all protected bases of discrimination. This directive reflects longstanding policy at the Department of Veterans Affairs (VA) for maintaining a model workplace free from harassment and other forms of discrimination. The VA further prohibits employees from engaging in harassing conduct for *any* reason regardless of whether the conduct is related to one of the Federally protected bases. The electronic version of this directive is maintained on the VA Publications website.

3. **RESPONSIBLE OFFICE**: The Office of Resolution Management, Diversity and Inclusion (ORMDI).

4. **RELATED HANDBOOK/DIRECTIVE**: VA Handbook 5979, Harassment Prevention Program Procedures (not yet published).

5. **RESCISSION**: None.

**CERTIFIED BY:**

**BY DIRECTION OF THE SECRETARY OF VETERANS AFFAIRS:**

/s/
Karen L. Brazell
Principal Executive Director, Office of
Acquisition, Logistics and Construction
and Chief Acquisition Officer, and
Acting Assistant Secretary for
Enterprise Integration

/s/
Daniel R. Sitterly
Assistant Secretary for
Human Resources and Administration/
Operations, Security and Preparedness

**DISTRIBUTION:** Electronic only

## HARASSMENT PREVENTION POLICY

1. **PURPOSE**. This directive establishes the Department of Veterans Affairs (VA) harassment prevention policy.

2. **POLICY**. It is policy at VA to maintain a work environment free from harassment. Harassing conduct will not be tolerated. This policy requires immediate and appropriate action to be taken by management when notified of hostile conduct that is, or has the potential to become, severe or pervasive to the point that it constitutes a legal claim of sexual or non-sexual harassment.

   a. EEOC defines harassment as any unwelcome verbal or physical conduct based upon race, color, religion, sex (including gender identity, transgender status, sexual orientation, and pregnancy), national origin, age, disability, genetic information, parental status or retaliation for opposing discriminatory practices or participating in the discrimination complaint process, when:

      (1) The behavior can reasonably be considered to adversely affect the work environment, or,

      (2) An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct.

   b. Sexual harassment involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to or rejection of such conduct is made explicitly or implicitly a term or condition of one's employment or is used as a basis for career or employment decisions affecting that person; or such conduct interferes with an individual's performance or creates an intimidating, hostile or offensive work environment.

   c. VA further prohibits employees from engaging in harassing conduct for any reason regardless of whether the conduct was related to one of the legally protected bases identified above in paragraph 2.a.

   d. Additionally, it is important to understand the distinction between harassment and legitimate management actions. For example, management is required to provide performance feedback to employees regarding time and attendance, conduct, and work performance. Negative feedback or action from management can be unpleasant for the employee, but negative feedback or delivery of same may not rise to the level of harassment. Harassment does not involve whistleblower retaliation. Examples of harassment include but not limited to offensive jokes, slurs, threats, offensive objects or pictures and intimation.

   e. Harassment allegations may be reported to the immediate supervisor; another management official if the alleged harasser is the immediate supervisor; the local Harassment Prevention Coordinator (HPC); or the VA Harassment Prevention Program (HPP) Office at 1-888-566-3982.

   f. VA will not tolerate retaliation against any individual for reporting harassing conduct under this or any other policy or procedure, or for assisting in any inquiry about such a report.

## 3. RESPONSIBILITIES.

   a. **Assistant Secretary for Human Resources and Administration/Office of Security and Preparedness (AS HRA/OSP)** shall provide oversight and support to the HPP, ensuring a harassment-free environment is established and maintained in the VA

   b. **Under Secretaries, Assistant Secretaries, and Other Key Officials** shall perform following functions as outlined in VA Handbook 5979: (not yet published)

      (1) Ensure all employees are aware the policy is posted on the VA Publication Website and produce locally for employees who do not have access to email.

      (2) Coordinate with the ORMDI HPP office to ensure that all employees receive harassment prevention training provided by the ORMDI HPP office.

      (3) Appoint an HPC point of contact to coordinate with the ORMDI HPP office on all reports of harassment at the facility and staff office level.

      (4) Coordinate with the ORMDI HPP office to ensure that the HPC receives all HPC training within 30 -45 days of appointment.

      (5) Ensure that an investigation into harassment allegations is completed within 30 business days of receipt of the allegation.

      (6) Appoint individual(s) as determined through coordination with the HPP Program Manager (PM), to serve on a pool of neutral factfinders. The factfinders will receive training and remain available to conduct-fact-findings to the extent necessary.

   c. **Deputy Assistant Secretary/Office of Resolution Management, Diversity and Inclusion (DAS ORMDI)** shall:

      (1) Provide executive leadership, general oversight and support to the HPP and ensure that its functions remain separate and distinct from Equal Employment Opportunity (EEO) complaint processing functions.

      (2) Designate an ORMDI HPP Program Manager.

      (3) Develop and oversee VA-wide policy for processing harassment allegations.

      (4) Provide an electronic case management system and a call center to receive harassment allegations from VA employees and managers.

3

(5) Serve as the advisor to the AS/HRA/OSP on harassment matters.

d. **The ORMDI HPP Program Manager** shall:

    (1) Develop and oversee VA-wide policy for processing allegations of harassment in the ORMDI HPP office.

    (2) Establish HPP assessment guidelines for reviewing and documenting compliance with applicable laws, regulations and directives regarding allegations of harassment for facility and staff offices. Conduct a minimum of 10 compliance reviews per fiscal year.

    (3) Ensure that policies and procedures for processing allegations of harassment are developed, distributed and maintained in accordance with applicable laws and regulations.

    (4) Advise and assist the DAS/ORMDI and other key officials on matters relating to the HPP processes.

    (5) Provide the DAS/ORMDI with Administration and Staff Office performance reports, evaluations and trend data regarding HPP compliance with applicable laws and regulations.

    (6) Track, monitor and report the quantity and quality of VA's harassment prevention activities uploaded into the Harassment Prevention Program Intake System (HPPIS).

    (7) Coordinate Department-wide training on how to prevent harassment in the workplace and procedures for reporting and addressing harassment in accordance with applicable EEOC regulations.

    (8) Ensure that all allegations of harassment are processed in accordance with applicable laws, regulations, directives and the HPP Handbook.

    (9) Work with VA management officials to raise awareness on their responsibilities in the Harassment Prevention arena.

    (10) Ensure that all employees receive the appropriate level of training required by EEOC directives and that sufficient resources are allocated to achieve organizational objectives.

    (11) Review and approve all existing VA and Administration policies and information documents to make sure they are current, complete, and aligned with VA's Sexual Harassment Policy.

e. **ORMDI HPP Program Specialist** shall:

    (1) Serve as HPP subject matter experts (SMEs) providing program guidance and education to customers and stakeholders.

(2) Upload, review, and monitor reports of harassment in the HPPIS.

(3) Notify Administration, Staff Office and facility Directors upon receipt of reports of harassment and when offices fail to respond within 30 business days.

(4) Timely monitor and track case assignments to include following up with allegers to ensure their allegations are handled in accordance with the HPP procedures.

(5) Coordinate with management and the HPCs to ensure that all allegations of harassment are addressed in accordance with EEOC regulations.

(6) Work closely with management to monitor compliance on corrective actions taken.

(7) Develop uniform training programs and collaborate with other VA organizations in the delivery of training for managers and employees in areas that often lead to HPP and EEO complaints.

(8) Identify internal and external training programs to address training needs.

(9) Conduct a compliance review at facilities and/or Staff Offices.

f.  **VA Harassment Prevention Coordinator** shall:

(1) Serve in a collateral role as a coordinator for harassment allegations received in their respective Administrations and/or Staff Offices.

(2) Coordinate with the HPP Program Specialist to ensure management is aware and timely addresses all allegations assigned to them throughout the process.

(3) Review, update and input all required information and records in the HPPIS related to reports of harassment.

(4) Serve as a point of contact for staff to report allegations of harassment. Upon receipt of a report of harassment, HPC will notify management and educate the alleger on the next steps in the process staff on the HPP process.

(5) Coordinate with the ORMDI HPP office on providing HPP awareness training to the workforce.

g.  **VA Administration and Staff Office Managers/Supervisors** shall perform following functions as outlined in VA Handbook 5979: (not yet published)

(1) Work to prevent harassment in the workplace.

(2) Ensure that their subordinates are aware of this directive and associated handbook VA Handbook 5979 (not yet published) and its requirements.

(3) Ensure that all employees receive harassment prevention training.

(4) Immediately begin to address (within five business days) any incident of inappropriate and harassing behavior (e.g., separate the alleged perpetrator of sexual harassment from the employee alleging harassment; begin an inquiry, factfinding, mediation, administrative investigation, to the extent possible). Allegations involving senior leaders, as defined in VA Directive 0500, must be reported to OAWP. OAWP may investigate these allegations. Notify the ORMDI HPP office that the case was reported to OAWP. For more information about OAWP, visit www.va.gov/accountability.

(5) Ensure allegations of inappropriate and harassing behavior are kept confidential, to the extent permitted by law.

(6) Submit a copy of the completed factfinding, inquiry, administrative investigation and/or outcome to the HPP and/or HPC within 30 business days of the receipt of the report of harassment. A template will be provided in Handbook 5979, not yet published.

(7) Within three (3) business days of the outcome, follow up with the employee who reported the harassing behavior.

(8) Take prompt and appropriate corrective and disciplinary action against personnel who have engaged in harassing conduct or who have not carried out their responsibilities under this policy.

(9) Within three (3) business days, notify the ORMDI HPP office of the corrective action or any other measures taken to address the substantiated allegations.

(10) Notify the ORMDI HPP office, within two (2) business days, of all reports of harassment (one (1) business day for sexual harassment), reported directly to the facility or staff office and not to the HPP Agency Office. Submit documentation outlining efforts to address issues and the outcome.

(11) Participate and support the HPP Compliance Review Program, conducted at facilities or staff offices. Provide a corrective action plan within thirty (30) business days of receipt of the HPP Compliance Review Program Final Report.

h. **General Counsel** In addition to the responsibilities in Para 3 b above, shall provide expert legal advice and guidance relevant to harassment prevention responsibilities and assist in legal issues that arise during HPP inquiries.

i. **Assistant Secretary for Accountability and Whistleblower Protection** In addition to the responsibilities in Para 3 b above, shall:

    (1) Receive allegations of harassment against senior leaders as defined in VA Directive 0500.

j.  **Administration and Staff Office Human Resource Offices (HR)** shall:

    (1) Receive biannual HPP training specific to their roles in TMS, as provided by ORMDI.

    (2) Provide guidance and advice to employees and management to address harassment allegations.

k.  **Employee Relations/Labor Relations (ER/LR) Supervisor** shall:

    (1) Provide guidance and advice to management to address harassment allegations when a complaint of harassment has been received from the ORMDI HPP office.

    (2) Provide guidance and advice to management when corrective action is required in response to harassment allegations.

    (3) Provide confirmation to the ORMDI HPP office within three business days that corrective action has been taken when it has been determined that inappropriate behavior has occurred.

l.  **It is VA policy that all VA Employees** shall:

    (1) Act professionally and refrain from inappropriate and harassing conduct.

    (2) Immediately report inappropriate and harassing behavior to a management official, HPC and/or the ORMDI HPP office, if subjected to unwelcome hostile or abusive conduct.

    (3) Immediately report inappropriate and harassing behavior to a management official, HPC and/or the ORMDI HPP office, if as a bystander, harassing behavior is witnessed.

    (4) Fully cooperate in an inquiry or fact-finding of a harassment allegation.

4. **REFERENCES**.

a.  Title VII of The Civil Rights Act of 1964, as amended, 42 United States Code (U.S.C.) §2000e-16.

b.  Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §633a.

c.  Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et seq.

d.  Rehabilitation Act of 1973, as amended, 29 U.S.C. §791(g).

e. Civil Service Reform Act of 1978, 5 U.S.C. §2302(b) (10).

f. Genetic Information Nondiscrimination Act of 2008, (GINA), 42 U.S.C. §2000ff-1(b).

g. The Pregnancy Discrimination Act of 1978, P.L. Number 95-955.

h. Executive Order 11478, as amended, prohibiting discrimination based on sexual orientation, May 28, 1998.

i. Executive Order 13152 prohibiting discrimination based on parental status, May 2000.

j. EEOC Management Directive 715, December 3, 2019.

k. EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, June 18, 1999.

l. EEOC Management Directive 110, as revised, August 5, 2015.

m. VA Secretary Equal Employment Opportunity, Diversity and Inclusion, No FEAR and Whistleblower Rights and Protection Policy Statement, December 19,2019.

n. VA Secretary Memo regarding the establishment of the Anti-Harassment Office/HPP, February 12, 2015.

o. VA Handbook 0500, Investigation of Whistleblower Disclosures and Allegations Involving Senior Leaders or Whistleblower Retaliation

p. Equal Employment Opportunity Commission (EEOC)

APPENDIX A

## GUIDELINES TO REPORT HARASSING CONDUCT

## 1. REPORTING HARASSMENT

Harassment by or against VA employees, applicants, contract employees, clients/patients, customers or anyone doing business with VA is strictly prohibited. Any individual who has been subjected to and/or witnessed unwelcome conduct is encouraged to inform the person(s) responsible for the conduct that it is unwelcome and offensive. If the conduct continues or the individual is uncomfortable confronting the responsible person(s) about the conduct, he or she must immediately report the matter to the following:

    a.  Their immediate supervisor.

    b.  Another supervisor or other management official, if the supervisor is the alleged harasser.

    c.  The HPC. For a list of HPCs, visit www.va.gov/ORM/HPP.asp.

    d.  The ORMDI HPP office at 1-888-566-3982.

In addition to understanding what harassment is, it is also important to understand what it is not. Harassment should be distinguished from management's legitimate efforts to supervise employee. For example, management is required to provide feedback to employees regarding time and attendance, conduct, and work performance. Negative feedback or action from management on these topics could be unpleasant for the employee but may not rise to the level of harassment. Harassment does not involve whistleblower retaliation.

All information pertaining to a harassment claim must be maintained on a confidential basis. The maintenance of records and any disclosure of information from these records must be in complete compliance with the Privacy Act, Title 5 U.S.C. 552a. Such information can be disclosed on a "need to know" basis.

VA will not tolerate retaliation against any individual for reporting harassing conduct under this or any other policy or procedure, or for assisting in any inquiry about such a report)

## 2. INQUIRY INTO ALLEGATIONS OF HARASSING CONDUCT

A supervisor or manager who receives an allegation or witnesses harassing conduct must:

    a.  Immediately assess the situation and consult with the HPC and/or Human Resources Management ER/LR staff to determine what type of inquiry will occur.

Note: Harassment allegations involving senior leaders, as defined in VA Directive 0500, must be reported to OAWP. OAWP may investigate these allegations. For more information about OAWP, visit www.va.gov/accountability.

b.  Notify the alleger that his/her report of harassment has been received and an inquiry into the allegations will be conducted.

c.  Designate a factfinder immediately when it is determined that an informal fact-finding is necessary. See the above note about harassment allegations involving senior leaders. Managers and supervisors dealing with allegations of inappropriate and harassing conduct should avail themselves of the expertise of the HPP Specialist, HPC and/or HR Specialists throughout this process. This expertise is critical when selecting the person who will serve as the factfinder.

NOTE: REPORTS OF SEXUAL HARASSMENT:

When sexual harassment reports are received directly by the HPC or the supervisor, the HPC and supervisors are required to report the matter to the ORMDI HPP office within one (1) business day for monitoring and tracking. The report must be in writing and must include a brief description of the alleged harassing conduct, name of the alleger and accused, and preliminary steps taken, in response to the allegation. For a sample harassment complaint form to be used by the supervisor and the HPC visit www.va.gov/ORM/HPP.asp.

d.  In consultation with subject-matter experts, make the ultimate determination as to whether the conduct violated the policy and, if so, what type of corrective action is warranted. Any employee, supervisor or manager who is found to have violated the harassment prevention policy or procedures may be subjected to disciplinary action.

e.  The supervisor and/or designee will notify the employee who reported the harassment of the completion and outcome of the process.

The ORMDI HPP office will:

a.  Monitor and track reports of harassment to ensure allegations were addressed by management.

b.  Follows up with employees to ensure that management notified them:
    - of the outcome
    - that the situation was resolved
    - that any concerns about the process are addressed

c.  Review all outcomes for appropriateness and timeliness.

d.  Follow up with the appropriate management official to ensure that action is taken in accordance with the VA Handbook 5979 (not yet published).

Note: Reporting allegations of harassment in the Harassment Prevention arena does not preclude an individual from filing an EEO complaint. The EEO and HPP are separate programs. To file an allege harassment complaint in the EEO arena, the individual must contact an ORMDI EEO Counselor within 45 calendar days of the date of the alleged discrimination. For additional information, visit the ORMDI website at http://www.va.gov/ORM/HPP.asp.

# **EXHIBIT C**

## U.S. Equal Employment Opportunity Commission

Enter search terms...   Search

CONNECT WITH US     

| Home | About EEOC | Employees & Applicants | Employers / Small Business |
|---|---|---|---|
| Federal Agencies | Contact Us | | |

Laws, Regulations,
Guidance & MOUs

Overview

Laws

Regulations

Guidance

Memoranda of
Understanding

Discrimination by
Type

Prohibited
Practices

Home > Laws, Regulations & Guidance > Types of Discrimination

  

# Harassment

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people.

Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following:

**Employer Coverage**

15 or more employees under Title VII and the ADA, 20 or more employees under the ADEA

**Time Limits**

180 days to file a charge *(may be extended by state laws)*

Federal employees have 45 days to contact an EEO counselor

**For more information:**

▶ Title VII of the Civil Rights Act

▶ The Age Discrimination in Employment Act

▶ The Americans with Disabilities Act

▶ Policy & Guidance

▶ Statistics

**See Also**

Select Task Force on the Study of Harassment in the Workplace

▶ Report of the Co-Chairs of the Select Task Force

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee.

- The victim does not have to be the person harassed, but can be anyone affected by the offensive conduct.

- Unlawful harassment may occur without economic injury to, or discharge of, the victim.

Prevention is the best tool to eliminate harassment in the workplace. Employers are encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management at an early stage to prevent its escalation.

## Employer Liability for Harassment

The employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

The employer will be liable for harassment by non-supervisory employees or non-employees over whom it has control (e.g., independent contractors or customers on the premises), if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action.

When investigating allegations of harassment, the EEOC looks at the entire record: including the nature of the conduct, and the context in which the alleged incidents occurred. A determination of whether harassment is severe or pervasive enough to be illegal is made on a case-by-case basis.

If you believe that the harassment you are experiencing or witnessing is of a specifically sexual nature, you may want to see EEOC's information on sexual harassment.

▶ Executive Summary and Recommendations

▶ Checklists and Chart of Risk Factors for Employers

▶ Highlights of the Report: PowerPoint Presentation (PDF)

▶ Promising Practices for Preventing Harassment